## WILMOT v. RICHARDSON.

June, 1866.

Affirming 7 Bosw. 570.

A seller of merchandise, with a lien for the price, who, with knowledge that the buyer has obtained advances upon a consignment of it to factors abroad, sues the buyer, on contract, for the price, thereby ratifies the sale, and can not afterward recover against the consignees in an action for money received.

John Wilmot, William Gooderham and others, sued Thomas Richardson and others, in the N. Y. superior court.

Plaintiffs composed the firm of J. Wilmot & Co., flour dealers. Defendants had a house in New York under the name of Thomas Richardson & Co., and one in Liverpool under that of Richardson, Spence & Co.

One Patterson arranged with defendants that on his purchasing flour and consigning it by them to their Liverpool house, they should make advances to him on the price.

The flour in question was purchased by Patterson, May

5, on which day the bought and sold notes were delivered by the broker, McKean, to plaintiffs and to Patterson. On May 9, the defendants made advance to Patterson of seven dollars per barrel thereon, in the faith that it was his flour. It had been sold by plaintiff at seven dollars and ninety-three and three-quarter cents per barrel to Patterson. On May 11, the flour having been delivered on board the vessels for Liverpool, the plaintiffs delivered the ships' receipts therefor to McKean, as they were conditionally to be returned if he failed to get the money thereon from defendants. These were delivered by Patterson to the defendants on the twelfth, who then advanced to him six thousand six hundred and fifty-one $\frac{10}{100}$ dollars, but on account of other flour. On the thirteenth or fourteenth, the vessels, containing the flour, sailed for Liverpool.

On Tuesday, May 16, for the first time, Wilmot called on defendants as to this flour. On the 13th they had received of Patterson five thousand dollars upon it.

Negotiations then ensued, which resulted in plaintiffs receiving Patterson's order or draft on defendants for the net proceeds thereafter to accrue from his transactions with them, and this order was accepted by defendants by a written memorandum which also stated that they had written to their Liverpool house informing them thereof, and instructing them to hold all proceeds of sales subject to the order of defendants only.

The sum of two thousand eight hundred and eleven dollars and twenty-seven cents, proceeds of such sales was thereafter paid to Wilmot, who gave receipt as balance in full of proceeds of sales of flour as per your acceptance of Walter Patterson's order in our favor.

After the giving and acceptance of the order, but before the receipt of these proceeds, plaintiffs sued Patterson for the price of the flour.

*The superior court* held, that plaintiffs could not thereafter recover from defendants as upon a sale and delivery to them of the flour or as upon a conversion of it by them. Reported in 7 *Bosw.* 570, and see a previous decision in 6 *Duer*, 328.

By the Court.—Peckham, J.—It is entirely clear from the conceded facts that the defendants acted in entire good faith in the whole transaction. There is not a fact at war with this view. The same may be said of the plaintiffs. It is a question of mere law as to the rights of the parties.

The plaintiffs insist here, that they are entitled to recover the proceeds of the flour to the extent of their claim against Patterson for the balance of the purchase-money, as money had and received by the defendants to the plaintiffs' use; that the title to the flour vested in Patterson by the bought and sold notes before delivery of the ships' receipts and certainly by the delivery of the flour on the ships; that they still had a lien for the purchase-money which they never waived; and the flour having been sold by defendants, their action for money had and received lies against defendants. See Terry v. Wheeler, 25 N. Y. 520; Kimberly v. Patchin, 19 N. Y. 330, and cases cited; Pars. Merc. L. 42.

When the whole facts were known to the plaintiffs, that the ships had sailed with the flour and they were unpaid in about ten thousand dollars, it may be they had a right to affirm the sale and prosecute for the price, or they might have rescinded the sale and looked to the flour, notified the defendants that they claimed the flour, and wholly disaffirmed the sale.

There may have been considerable question whether they could, under the circumstances, disaffirm the sale. There is none whatever as to their authority and power to ratify it. They could not do both.

On May 20, three days after Wilmot's interview with the defendants and Patterson, the plaintiffs commenced a suit against Patterson, for this demand for goods sold and delivered. They obtained an attachment upon an affidavit of the plaintiff Wilmot, in which he swears that Patterson is indebted to the plaintiffs in over ten thousand dollars for this flour, sold and delivered to him on May 12. There is not one word of qualification or explanation of that suit or of that affidavit.

Was not the sale and delivery, then, fully ratified by that suit? I think it was. Morris v. Rexford, 18 N. Y. 552.

This, it will be observed, was directly after the whole matter was consummated. Whether the delivery was qualified or ab-

solute—whether the sale was fraudulent or fair—the plaintiffs, by this affidavit and proceeding elected to hold it by an action, a consummated sale, an actual, absolute delivery.

The ships' receipts had been handed over by plaintiffs on May 12, and on the 13th, Patterson paid them on the flour, five thousand dollars.

Again, the plaintiffs deny that they received the order in their favor upon the defendants, drawn by Patterson, and declare they refused to receive it.

If they did, the conduct of the plaintiffs entirely differed with their declarations. Wilmot himself drew the latter portion of this order upon the defendants. The letter of acceptance from the defendants was received and retained by the plaintiffs, the money was paid to Wilmot upon that order, and so expressly received by him and receipted.

How can the declaration of Wilmot, that he positively refused to receive or have anything to do with that order, made on or before May 18, qualify his plain affirmative acts thereafter. He did, in fact, have something to do with the order. He received and retained the letter of acceptance thereof. He received, on two different occasions, in September, the money due thereon, and he receipted that money as received thereon.

The declarations, if made as claimed, were entirely idle and immaterial, in view of his subsequent conduct. The plaintiffs did, in fact, receive the order and its payment to the whole amount of the funds applicable thereto.

By this order in the plaintiffs' favor, the proceeds, in part, of this same flour, were appropriated to the plaintiffs. *They thus, in substance, affirmed or sanctioned its sale* in Liverpool by the defendants and ratified the sale to Patterson. Bank of Beloit *v.* Beal, 34 *N. Y.* 473 ; Palmerton *v.* Huxford, 4 *Den.* 166 ; Masson *v.* Bovet, 1 *Id.* 69.

There was in the evidence touching this ratification no disputed question of fact for the jury. Had the jury found against the ratification—against the plaintiffs' election to consider this a sale of the flour to Patterson, it would have been the clear duty of the court to set that verdict aside.

In such a case, as a general rule, the court may properly nonsuit the plaintiffs.

The theory of the plaintiffs' counsel that the plaintiffs had the right to sue for goods bargained and sold to Patterson, though not delivered, that they might waive the tort of the fraudulent purchase, and thus, without ratifying the transaction to Patterson of a sale and delivery, is theory only, and not founded upon the facts of this case. The law of it need not be considered. They brought no suit for goods bargained and sold.

[Remarks as to unimportant exceptions are omitted.]

The judgment should be affirmed.

All the judges concurred.

Judgment affirmed, with costs.